VERMONT SUPERIOR COURT
Environmental Division                                      Docket No. 25-ENV-00034
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT  05401
802-951-1740
www.vermontjudiciary.org



| Town of Guildhall v. Hodgdon |
| --- |

## MERITS DECISION

This is a zoning enforcement action commenced by the Town of Guildhall (Town) against Respondents, Allen Hodgdon and Ritalynn and Sean Branche (together, Respondents).  The Court held a merits hearing in this matter via the Zoom platform on May 21 and 27, 2026.[1]  The Town appeared through Attorney James Carroll.  Respondents appeared representing themselves.  Based on the evidence presented at trial, the Court finds and concludes as follows.[2]

### Findings of Fact

1.  The Town is a Vermont municipality located in Essex County.

2.  At all times material to this matter, the Town has had a duly adopted Zoning Bylaw (Bylaw) in effect.

3.  Respondents own certain real property containing approximately 10.1 acres, located at 593 Route 102 in the Town (Property).

4.  Mr. Hodgdon is the holder of a life estate in the Property with "full power to mortgage, lease, sell, gift or otherwise convey . . . fee title or any lesser interest in and to" the Property. Mrs. and Mr. Branche (together, the Branches) are the holders of a legal interest in the Property conveyed to them by Mr. Hodgdon via an Enhanced Life Estate Warranty Deed, dated April 5, 2023.

---

[1]  The merits hearing in this case commenced on May 21, 2026, with the Town presenting the testimony of its Zoning Administrator, Eileen Thietten.  After Ms. Thietten's testimony was complete, Respondents Ritalynn and Sean Branche reported to the Court that their Zoom connection had dropped several times and that they had missed and/or been unable to hear significant portions of the testimony.  After it became apparent that the Branches were unable to establish a reliable Zoom connection at their location in Guildhall, the Court recessed the merits hearing to May 27, 2026, and directed that the Town present Ms. Thietten's testimony again, with the Branches appearing in person at Costello Courthouse in Burlington for the reconvened hearing.  Subsequently, the Branches requested permission to participate remotely in the reconvened hearing from Mr. Hodgdon's location in Berlin, New Hampshire, which the Court granted.

[2]  The Town's Exhibits A through R and Respondents' Exhibits 1 through 18 were all admitted by stipulation at trial.

5. The Property (Parcel ID #102-1775), located on the west side of Route 102 in the Town, contains several wetlands and is crossed by a surface water stream that flows onto or abuts properties to the south before running under Route 102 to an estuary of the Connecticut River.

6. In July 2025, the Branches retained Bowman Consulting Group, Ltd., to prepare a delineation of the wetlands on the Property. The resulting wetland delineation map shows at least three wetlands on the Property with associated buffer zones. This wetland delineation was a prerequisite for the Branches to apply for a wastewater permit.

7. The Property is located in the Town's Rural Land Two (RL-2) and Forestry Conservation (FC) zoning districts, with approximately two-thirds of the lot located in RL-2 and one-third located in FC.

8. Prior to 2023, the Property was undeveloped and contained no structures. Sometime in early 2023, a portion of the Property was logged to create a cleared area adjacent to VT Route 102. To facilitate their logging activity and development of a future residential drive, Respondents obtained a highway access permit from VTrans in February 2023. Also in 2023, Respondents worked with GMP to bring electric power to the Property.

9. The Branches have occupied the Property since approximately May or June of 2023, when they moved a 2000 Coachman Catalina camper/travel trailer (camper) onto the Property and began residing therein.[3] Ritalynn Branche's teenage daughter has also resided in the camper since approximately September 2025.

10. The camper is located on the RL-2 portion of the Property.

11. The camper is owned by and registered with the Vermont Department of Motor Vehicles to R.S. Tree Landscaping, LLC, the Branches' business.

12. The camper has a factory-installed onboard potable water tank and a 100-gallon wastewater holding tank. There is also a tank to hold grey water. In addition, the Branches have a 200-gallon tote that is filled with water from off-site since there is no other potable water source presently on the Property.

13. The camper is connected to power and has gauges that indicate the levels of water and wastewater in the camper's tanks. There is also an alarm system for the onboard wastewater system which operates through power from the camper and alerts when the

---

[3] Mr. Hodgdon has stated that the camper was moved to the Property on May 9, 2023, while the Branches contend that they did not move the camper to the Property until June 2023. The precise date that the camper was moved to the Property is not critical to the issues in this enforcement action since it is undisputed that the Branches have lived in the camper for more than six months in a calendar year. On several occasions in the summer of 2023, the camper, which is on wheels, was moved off the Property while the Branches attended motocross races at Riverside Speedway and elsewhere, but it was returned to the Property in approximately October 2023, with residential occupancy continuing, following the races. Since October/November 2023, the camper has remained on the Property, although its location within the boundaries of the Property has changed at times.

tank is full. The alarm has never gone off while the Branches have been residing in the camper.

14. The wastewater and grey water tanks are periodically pumped by "C.D.S. Toilets," a company based out of Colebrook, New Hampshire. C.D.S. comes when called and the Branches pay them in cash. The Branches do not have receipts for this service.

15. Although Dan Mason, an enforcement officer from the State of Vermont Agency of Natural Resources (ANR), has visited the Property for the purpose of inspection, ANR has not identified any violations nor has it taken enforcement action against Respondents. There is no evidence that the camper's tanks have ever been discharged directly to the ground or that spills or overflows have occurred on the Property.

16. The Branches have been working with Jason Sterling, a licensed Vermont water supply and wastewater designer, to prepare an application to the State's Drinking Water and Groundwater Protection Division for a potable water supply and wastewater system on the Property. However, an application has not yet been submitted to ANR and there is presently no permitted on-site potable water source or permitted wastewater system of any kind on the site.

17. In September 2023, the Branches applied for a zoning permit to construct a dwelling on the Property. The application included a hand-drawn sketch depicting a 16 x 24 cabin, with notations stating "cabin will have a grey water drain and composting toilet" and "shallow well for wash and cooking none [sic] drinking." In their application, the Branches admitted that they were "living in camper while building house, installing power."[4]

18. The Zoning Administrator, Ms. Thietten, denied their application for a zoning permit in part due to the lack of a wastewater and potable water supply permit. Prior to that denial, Ms. Thietten had also advised Respondents, by separate letters issued in July and September 2023, that under Bylaws § 324.01 a travel trailer could not be used as living quarters on property within the boundaries of the Town for more than six months in any calendar year.[5]

---

[4] The zoning permit application was signed by Ritalynn Branche as "applicant" and Allen Hodgdon as "property owner." Sean Branche prepared the sketches. Although, at the time she submitted the application, Ms. Branche indicated that there were no watercourses or wetlands located on the Property and that the project did not require a septic/wastewater permit, she now understands that is not the case (i.e., there are watercourses/wetlands on the property and a wastewater permit is required).

[5] Section 324.01 of the Bylaw states: "Travel Trailers. It shall be unlawful for any person to park a camping trailer, travel trailer, pick-up coach and/or motor home on any public or private property, except in accordance with the regulations as follows:
A. In an approved travel trailer camp.
B. In an approved travel trailer sales lot.
C. Any property owner may park his travel trailer, or that of a visitor, on his own property, provided the trailer is parked no closer than six feet to any lot line.
D. A parked travel trailer shall not be used as living quarters for more than six months in any calendar year."

Moreover, the Bylaw defines "travel trailer or trailer' as "any vehicle used or so constructed as to permit its being used as a conveyance on the public streets and highways, whether licensed or not, and constructed in such a manner as will permit occupancy thereof as a temporary dwelling or sleeping place for one or more persons. A trailer under this bylaw shall also

3

19. Thereafter, in October 2023, Mr. Hodgdon filed a request with the Town's Zoning Board for a variance "to allow the Branches to remain on the property in their travel trailer until such time as their proposed home is fit for occupancy, such extended time period shall not exceed one year." This variance request was denied by the Board in November 2023 and the denial was not appealed.

20. On July 25, 2024, the Zoning Administrator issued a Notice of Violation (NOV) to Respondents. The NOV states, in part, that "an occupied travel trailer has been in use on the Property since May 9, 2023" and that such activity "constitutes unpermitted land development."

21. Following a timely appeal by Mr. Hodgdon of the NOV, the Zoning Board denied the appeal and upheld the NOV by decision dated December 24, 2024. Thereafter, Mr. Hodgdon, by letter dated "January 24, 2024" [sic] and received on January 30, 2025, filed a notice of appeal directly with the Town, which was subsequently forwarded to this Court for docketing purposes. The appeal was docketed as received January 30, 2025, and assigned Docket No. 25-ENV-00010.

22. Respondents received notice of the Zoning Administrator's denial of their zoning permit application, participated in the variance proceedings and received notice of the Zoning Board's decision thereon. Further, they received notice of the NOV that is the subject of this appeal, as well as participating in hearings for and receiving notice of the Zoning Board's decision denying their appeal of the NOV.

23. By Entry Order dated April 16, 2025, the Court dismissed Mr. Hodgdon's appeal for failure to pay the required filing fee or to seek a waiver of the fee despite multiple requests by the Court that he do so. In addition, the Court denied the appeal as untimely (having received the filing seven days after the expiration of the 30-day appeal period). There was no further appeal from the Court's action.

24. The Court's dismissal of the appeal rendered the Zoning Board's December 24, 2024 decision upholding the NOV final and unappealable.

25. Although the Branches have plans to build a dwelling on the Property, and would like to move out of the camper, they have not yet filed a new zoning permit application with the Town. They admit that they have continued to occupy the camper on the Property for well in excess of six months even though they have been informed that it is a violation of the Bylaws to do so. Their explanation for this is that they cannot afford to live elsewhere while they build.

26. Given the wetlands and other water resources on the Property, and the lack of a permitted wastewater system, various neighbors have health and environmental concerns (among others) related to the Branches occupancy of the camper. These include abutting

mean tent trailers, truck campers, vehicles converted to sleeping facilities, other than a mobile home and/or what normally constitutes a permanent dwelling unit." Bylaw § 502. It is undisputed that the travel trailer/camper at issue here meets this definition.

4

landowners Janine MacMahan and Edie Bell, and Patricia Martin, who owns nearby property directly across Route 102.[6] Ms. Bell's well, which is her only source of potable water, is located approximately 20 feet from the Branches' southerly property line.

27. The Branches purchased a structure to erect on the Property, but it has been sitting on the ground and may not be useable at this time. They have been hampered in their efforts to construct a dwelling by a lack of financial and technical resources and, to a certain extent, unfamiliarity with the local and State permitting process.[7]

28. Mr. Hodgdon is a former Guildhall town official, including having served on the Zoning Board, and assistant judge. He has some familiarity with zoning procedures and the law. He also questions the public benefit underlying § 324.01.D of the Bylaw.[8]

29. Both prior to and during this proceeding, Mr. Hodgdon has been suffering from significant health issues. Before moving to a nursing and rehabilitation facility in Berlin, New Hampshire, to receive care, the Branches provided care for him at his home in Guildhall. Mr. Hodgdon purchased the Property and conveyed an interest in it to the Branches to compensate them for this care.

30. The Town commenced this zoning enforcement action by complaint filed May 27, 2025. Mr. Hodgdon filed an answer on June 24, 2025. The Branches did not initially file an answer despite actively participating in status conferences with the Court. After being warned of potential adverse consequences if they did not answer the complaint, on May 21, 2026 the Branches submitted a hand-written answer as Exhibit 1 of their pre-filed exhibits. While the answer was not properly filed, and the Town may have received delayed notice of it, no motion for default judgment was ever filed by the Town.

31. Although it did not submit bills to support its claimed enforcement costs, the Town has spent in excess of $13,000 since the Zoning Administrator issued the July 25, 2025 NOV attempting to obtain compliance with the Bylaws. Due to the lack of documentation, it is not clear precisely what costs are included in this $13,000 figure.[9]

32. The Town seeks both monetary fines and penalties and injunctive relief, prohibiting Respondents from continued use of the camper as a residence and asks that they "be ordered to immediately vacate the travel trailer and be permanently enjoined from any

---

[6] Ms. Martin resides in Downingtown, PA, but owns property at 634 VT Route 102 and spends several weeks per year there. She is Respondent Hodgdon's cousin.

[7] The Branches expressed a strong desire to move out of the camper, which is a difficult living environment for three people. They have intended to build a house since moving to the Property but lack the funds to do so. In the meantime, they cannot afford to live elsewhere while they build. They plan to vacate the camper by the "end of the summer."

[8] Prior to the merits hearing, Mr. Hodgdon filed a Motion for Injunctive Relief, arguing that § 324.01.D's six-month occupancy limitation was unconstitutional/unenforceable. For reasons explained in our Entry Order dated May 18, 2026, that motion was denied.

[9] For example, it is unclear whether the Town has included the expense of defending Mr. Hodgdon's appeals to the Zoning Board and to this Court in Docket No. 25-ENV-00010 in its total enforcement costs. Similarly, the Court does not know how many hours the Town's counsel devoted to this matter or the hourly rate that he charged to the Town for legal services.

future unpermitted residential use thereof." The Town also seeks a declaration that Respondents' unpermitted use of the camper on the Property as a residence constitutes a violation of the Bylaws.

33. The approximately one-year period between the filing of the complaint and the merits hearing is attributable, in part, to efforts by the Town and the Court to provide the Respondents with a reasonable opportunity to bring the property into compliance with local and State regulatory requirements. While Respondents have taken some steps toward compliance, they have not obtained all necessary permits and approvals to use the Property for residential purposes.

## Discussion

**Enforcement Provisions**

Section 606.01 and 606.02 of the Bylaws respectively address penalties and remedies for zoning violations. These provisions generally track the statutory language of 24 V.S.A. § 4451 and 4452, except that the Town limits its maximum daily penalty for zoning violations to $100 per day. See 24 V.S.A. § 4451(a) (establishing a maximum daily penalty of $200 per day for zoning violations).[10] Like § 4452 of Title 24, § 606.02 specifically authorizes the Town's administrative officer to seek injunctive relief to prevent any use constituting a violation.

In a zoning enforcement action, the Town carries the burden of proving the existence of a violation. See In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.) (explaining that in a zoning enforcement action, the Town bears the burden of proof). Where, as here, an appeal of the NOV was dismissed (and that dismissal was not further appealed), the Town merely needs to show that the violations are ongoing and continuous for the period in which the Town seeks penalties. As the Vermont Supreme Court has explained, municipalities "need not produce evidence of a continuing violation for each and every day." City of Burlington v. Sisters & Brothers Inv. Grp., LLP, 2023 VT 24, ¶ 15 (quoting In re Jewell, 169 Vt. 604, 606 (1999)). Instead, municipalities may sustain their burden of proof with evidence that "weave[s] a sufficient pattern of violations for the court to infer a continuing violation for some or all of the period for which the [municipality] requests that the court impose penalties." Id.

By failing to perfect their appeal/timely appeal the Zoning Board's December 24, 2024 decision upholding the NOV, that decision is now final and binding. 24 V.S.A. § 4472(d). The Town provided credible documentary evidence and testimony that the violation(s) listed in the NOV and

---

[10] Unlike § 4451(a)(1), § 606.01 also does not contain language dictating the contents of a notice of violation.

decision are ongoing and continuous up to and including the date of trial. Indeed, the Branches admit that they violated Bylaw § 324.01 by continuously occupying the camper and using the same as living quarters for a period in excess of six months in any calendar year. They also admit that, to date, they have not submitted a new zoning permit application or wastewater permit application to potentially cure the violation. Therefore, the fact of the continuing violation is established as a matter of law.

The seven-day cure period provided in the NOV expired on August 1, 2024. Trial was held on May 21, 2026. Accordingly, Respondents are liable for 659 days of violation. Bylaw § 606.01.A (Any person who violates any bylaw after it has been adopted under chapter 24 V.S.A. Chapter 117 or who violates a comparable ordinance or regulation adopted under prior enabling laws shall be fined not more than $100.00 for each offense. No action may be brought under this section unless the alleged offender has had at least seven days' warning notice by certified mail.); see also 24 V.S.A. § 4451.

When determining the amount of a fine for a zoning violation under 24 V.S.A. § 4451 and similar regulatory provisions, the Court has broad discretion once it has determined the existence of the violation. Sisters and Brothers Inv. Grp., 2023 VT 24, ¶ 18. Typically, in assessing zoning-related fines, the Court looks to the factors enumerated in 10 V.S.A. § 8010, which guide the assessment of administrative penalties from state agencies. Town of Duxbury v. Kessler, 23-ENV-00128, slip op. at 6 (Vt. Super. Ct. Env. Div. Oct. 28, 2025) (Walsh, J.) (quoting Town of Pawlet v. Banyai, 2022 VT 4, ¶ 30) ("When determining a fine, the Environmental Division must 'balance any continuing violation against the cost of compliance and . . . consider other relevant factors, including those specified in the Unified Environmental Enforcement Act.'") (internal citation omitted)). The § 8010 factors are:

(1) the degree of actual or potential impact on public health, safety, welfare, and the environment resulting from the violation;

(2) the presence of mitigating circumstances, including unreasonable delay by the Secretary in seeking enforcement;

(3) whether the respondent knew or had reason to know the violation existed;

(4) the respondent's record of compliance;

(5) Repealed by 2007, Adj. Sess. No. 191, § 5, eff. July 1, 2008.

(6) the deterrent effect of the penalty;

(7) the State's actual costs of enforcement;

(8) the length of time the violation has existed.

10 V.S.A. § 8010(b).

The Town asserts that it has expended more than $13,000 in this enforcement action and it seeks "a substantial fine and penalty on the Branches and Hodgdon jointly and severally of not less than an amount to fully compensate Guildhall for its accumulated and any future expenses from August 1st [2024] to the date the violation is abated." Town's Proposed Findings of Fact and Conclusions of Law at 14. A daily penalty to cover the Town's costs would amount to just under $20 per day of violation. To determine the reasonableness of this penalty figure, however, we must turn to the factors listed in 10 V.S.A. § 8010, keeping in mind that the penalties imposed under § 4451(a) for zoning violations are intended to be remedial rather than punitive in nature. Town of Hinesburg v. Dunkling, 167 Vt. 514, 527–28 (1998).

I.     Actual or Potential Impact on Public Health/Safety/Welfare/Environment

The Court finds this factor weighs in favor of a moderate daily fine. For the first six months after the Branches moved the camper to the Property and began occupying it as living quarters (in approximately June of 2023), they were not in violation of the Bylaw. By the end of 2023, however, the six-month period for use of the camper as living quarters had expired. Thereafter, the Branches continued occupying the camper as living quarters, without a zoning permit or variance, despite having been informed that use of the trailer in this way for more than six months in a calendar year was prohibited, constituted a violation of the Bylaw, and presented a potential risk to public health, safety, welfare, and the environmental from contamination due to unregulated disposal of septic waste.

As noted above, the Property contains several wetlands and a stream which abuts neighboring properties and runs into an estuary of the Connecticut River. Ms. Bell's well is also located near the Property boundary. While there is no evidence of a discharge of wastewater to the ground or to any watercourse/water source, and no actual harm to public health, safety or the environment occurred in this case, extended occupancy of the camper as living quarters and long-term reliance on the camper's limited-capacity wastewater tank, gauges, alarm system (which, in turn relies on an electrical connection) and periodic pumping service to prevent an overflow clearly present a potential impact to public health and the environment. Similarly, the lack of a reliable potable water supply presents risks to the Branches' health and potential exposure of others to pathogens. These risks were exacerbated when a third person—Ms. Branche's daughter—moved into the camper. Simply put, two to three people living in a camper for an extended period with only limited wastewater and water supply capacity—even in the absence of an actual spill or discharge of wastewater—presents a potential impact to public health, safety, welfare, and the environment.

8

II.    Presence of Mitigating Circumstances

With respect to mitigating circumstances, we consider whether the Town has unreasonably delayed in bringing the enforcement action in this case.  10 V.S.A. § 8010(b)(2); Town of Colchester v. Huard, 24-ENV-00069, slip op. at 5 (Vt. Super. Ct. Envtl. Div. May 22, 2025) (McLean, J.).  The July 25, 2024 NOV states that the Town had previously sent a violation letter to Mr. Hodgdon on July 7, 2023 and to Mr. Hodgdon and the Branches on September 28, 2023.  It is not clear why the Town did not pursue enforcement of those prior notices of violation.  As noted above, the Town commenced this enforcement action by complaint filed May 27, 2025.  This is approximately 17 to 18 months after the violation (i.e., unpermitted use of a travel trailer as living quarters for more than six months) first occurred.  While the Court understands that the Town may have wished to resolve Mr. Hodgdon's appeal of the NOV before commencing an enforcement action, this factor supports some reduction of the penalty amount based on unreasonable delay.

The fact that the Branches attempted to obtain a zoning permit to construct a dwelling on the Property, subsequently commissioned a wetland delineation, and prepared a septic design despite their limited resources and general lack of familiarity with the permitting process also provides some potential for mitigation.  Clearly, they have incurred some costs in an effort to address the Town's and neighbors' concerns and have done what they can given their economic circumstances.  At the same time, it is undisputed that the Branches have not yet received necessary local and State permits and they have nonetheless continued to unlawfully occupy the camper for a period well in excess of that authorized by the Bylaw.  Thus, while the Court recognizes the Branches' efforts toward compliance, it must balance this with the extended nature of the violation and the fact that compliance has not yet been achieved.

III.    Respondent's Knowledge of Violation/Record of Compliance

The third factor (Respondent's knowledge of the violation) weighs in favor of a larger daily fine.  The record in this case clearly indicates that the Zoning Administrator notified Mr. Hodgdon by letter as early as July 7, 2023, that use of a travel trailer as living quarters for more than six months was prohibited by § 324.01 of the Bylaws.  All Respondents received that information by zoning violation letter dated September 28, 2023.[11]  Accordingly, Respondents had reason to know that the Town was alleging violations of the Bylaw relative to improper use of the travel trailer/camper as early

---

[11]  Notably, this is the same day (September 28, 2023) that Respondents applied for a zoning permit.

9

as mid-to-late 2023.[12] They also received the Zoning Board's denial of their variance request to allow an extension of time to reside in the camper in January 2024, as well as the July 25, 2024 NOV that forms the basis of this action. Despite knowledge of the violation, the Branches have continued to live in the camper, with Mr. Hodgdon's acquiescence in—and active support for—this conduct. This factor weighs in favor of a larger daily fine.

By contrast, the fourth factor (Respondents' record of compliance), weighs in favor of a lower fine—there is no evidence of other, past zoning violations by any of the Respondents.[13]

## V. Deterrent Effect of Penalty

The penalty amount should be sufficient to deter Respondents from continuing to violate the Regulations.[14] Put differently:

> A civil penalty in a zoning or environmental enforcement case should be calculated so as to make it more expensive for defendants to violate the law than to comply with it. To fail to impose an appropriate penalty on a . . . [respondent] who proceeds with a project after being notified of the violation makes a mockery of the great majority of citizens who apply for and abide by zoning permits and other municipal land use approvals.

Town of Calais v. Noordsij, No. 142-6-06 Vtec, slip. op. at 6–7, (Aug. 29, 2008) (Wright, J.).

The evidence regarding Respondents' full financial circumstances is unclear. The Branches, although self-employed, appear to have a limited ability to pay any substantial penalty amount in full and would likely require installment payments. They also have incurred costs associated with their wetland delimitation and wastewater design and do not have the resources to live elsewhere while they build. Mr. Hodgdon's income is social security and retirement from the State of Vermont; he is "impecunious" after paying his basic living expenses. The Town has indicated that while it is sympathetic to the difficulties and costs of securing permits and installing systems that comply with local and State regulations, it believes a substantial fine and penalty on Respondents, jointly and

---

[12] Whether the violations alleged in July and September 2023 were in fact violations of Bylaw § 324.01 at that time are issues beyond the scope of this enforcement action. Nonetheless, the violation at issue here has continued for an extended period of time. While the Branches have made some efforts to obtain local and State permits to construct a dwelling and wastewater system on the Property, they have continued living in the camper knowing that doing so is a violation of the Bylaw. Other than filing appeals, which he ultimately did not pursue or diligently prosecute, Mr. Hodgdon has not taken action to cure the violation. Respondents have allowed the violation at issue to continue for an extended period, despite clear notice, and have not cured at any point in time.

[13] The prior notices of violation referenced in the July 25, 2024 NOV all relate to the same conduct.

[14] The Court notes that some aspects of this factor may encourage consideration of the general deterrent effect of the penalty on the broader community to incentivize community-wide compliance with the Bylaw. This is generally consistent with the overarching purpose of enforcement actions, which is to further the public interest in compliance with applicable regulations. The Court need not conduct an extensive analysis of these goals, given that both are functionally intrinsic to the application of the factors to this case and the Court's ultimate conclusion.

severally, is appropriate in this case. The Town is concerned, among other things, with the length and notorious nature of the violation and the resulting need for both specific and general deterrence. It seeks an ongoing penalty to ensure deterrence.

Taking into account the remedial goals of Bylaw § 606.01 and 24 V.S.A § 4451 (including both specific and general deterrence), the costs of enforcement and compliance and Respondents' ability to pay, among other factors, the Court concludes that this factor weighs in favor of a low to moderate daily fine. The Town is correct that Respondents have, to a certain extent, allowed the violation at issue to languish despite having knowledge of it since July 2023. It is less clear that Respondents had the practical or financial ability to cure the violation, at least without the Branches rendering themselves (and Ms. Branche's teenage daughter) homeless. Given the costs of compliance to the Branches, the penalty imposed herein, and the injunctive relief contemplated below, the Court believes that this provides adequate deterrence; it does not believe that a substantial, continuing penalty to compensate the Town for both accumulated and anticipated future expenses is warranted at this time. If the Branches fail to comply with this Court's orders, the Town may seek additional reimbursement (including attorney fees) in connection with any necessary contempt proceedings.

VI.     Actual Costs of Enforcement

The Town's actual costs of enforcement in this matter were approximately $13,000. As discussed above, the Town did not support this figure with documentation. The Court does not know the precise basis for this amount, nor can it fully assess its reasonableness without knowledge of things like the number of hours billed by the Town's legal counsel and his hourly rate. Respondents, however, do not challenge the Town's enforcement costs. Given its experience with other zoning enforcement matters, the Court believes the Town's alleged enforcement costs are generally within the range of expenses typically incurred by Vermont municipalities for legal services and litigation costs in zoning enforcement cases of this nature.

VII.     Length of Time Violation Has Existed

At the time of the hearing, the violation had existed for 659 days. This is a significant amount of time, particularly considering that Respondents have functionally been aware of this violation from July of 2023 (even though the NOV at issue here was dated July 25, 2024). This weighs in favor of a somewhat larger daily fine.

VIII.     Fine Imposed

For all of the foregoing reasons and with consideration of the above factors, the Court imposes a penalty of $10 per day for every day of violation, running from August 1, 2024, to May 21, 2026 (659

11

days) for a total fine of $6,590.00, owed jointly and severally by Respondents, to be paid to the Town within 180 days of the date of this order.[15] The parties are free to agree to a mutually acceptable repayment schedule, provided that such schedule ensures repayment in full within the imposed deadline. This fine shall constitute a lien on the Property.

IX.    Injunctive Relief

The Town seeks injunctive relief, including a mandatory injunction, "prohibiting the Branches and Hodgdon [sic] continued placement and occupation of a travel trailer structure for use as a residence and living quarters on the Property and that the Branches and Hodgdon be ordered to immediately vacate the travel trailer and be permanently enjoined from any future unpermitted residential use thereof." Town's Proposed Findings of Fact and Conclusions of Law at 17. The Vermont Supreme Court held in Town of Sherburne v. Carpenter, 155 Vt. 126, 131–32 (1990), and has subsequently reiterated, that "[i]f the zoning violation is substantial and involves conscious wrongdoing, the . . . [municipality] is entitled to an injunction, including a mandatory injunction to remove an offending structure, as a matter of course." See Fenwick v. City of Burlington, 167 Vt. 425, 435 (1997) (citation omitted). The evidence in this case indicates that the violation was both substantial (i.e., Respondents admit that they have used the camper as living quarters for more than six months in any calendar year and continue to do so) and involved conscious wrongdoing (i.e., Respondents knew as early as July 2023 that use of the camper as living quarters for more than six months in any calendar year constituted a violation of the Bylaw). Therefore, the Town is entitled to injunctive relief, including a mandatory injunction.[16]

However, in recognition of the Branches' testimony that they do not want to live in the camper and plan to vacate the same by the end of the summer, the Court imposes the following injunctive relief—the Branches shall vacate the camper within 90 days of the date of the Court's Judgment Order

---

[15] While the Town's costs of enforcement are a relevant factor in our penalty analysis, the Court is not obligated "to allow a town to recover all of its out-of-pocket expenses." Town of Hinesburg v. Dunkling, 167 Vt. 514, 529 (1998). Rather, "the process of affixing a sanction that compensates the Government for all its costs inevitably involves an element of rough justice." Id. Here, the Town's costs of enforcement exceed what would constitute a reasonable penalty under the circumstances and would likely have a negative effect on Respondents' ability to achieve compliance given their limited resources and anticipated costs.

[16] While the Town is entitled to an injunction, including a mandatory injunction requiring the Branches to vacate the camper and discontinue residential use thereof, it is not clear that the Court may order Respondents to remove the camper from the Property. Bylaw § 324.01.C appears to authorize a property owner to park a travel trailer on his or her own property, provided the trailer is parked no closer than six feet to any lot line.

The Court makes no conclusion as to whether the camper can be lawfully moved to another property in the Town and nothing in this decision seeks to authorize Respondents to move the camper to another location in the Town without necessary permitting, either from the Town or any other entity that may have regulatory authority over such action.

in this case and shall cease using it as a residence and living quarters, except as authorized by the Bylaw. If the Branches obtain a wastewater and potable water supply permit from the State within the 90-day period (or thereafter), nothing in this decision shall preclude them from modifying the camper for use as a mobile home or as a component of a dwelling, and connecting the same to the wastewater/water supply system(s), subject to local and State permitting requirements.

## Conclusion

This concludes the matter before the Court. A Judgment Order accompanies this Decision. Electronically signed on July 2, 2026, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division